UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| RONTESE L. MILLER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 4:22-CV-00943-SPM |
| | ) | |
| MICHELE BUCKNER, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

This matter is before the undersigned on the petition of Missouri state prisoner Rontese L. Miller ("Petitioner") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). ECF No. 9. For the following reasons, the petition will be denied.

### I.    FACTUAL BACKGROUND

On June 24, 2015, Jennifer Kaye Rogers, a manager at Advance America in St. Charles, arrived at the store before it opened and took between $200 and $600 out of the safe to put into the register. Resp't Ex. A, at 118-20.[1] At about 10:35 a.m., a man wearing a maroon hat with a black bandana underneath it, a maroon shirt, jeans, and black tennis shoes sought entrance into the store. *Id.* at 120-21. When Ms. Rogers buzzed him in, she recognized him as the same individual who had had been caught on video robbing another Advance America store in St. Ann a few weeks

---

[1] The Court refers to the page numbers at the center of the bottom of the page of Respondent's Exhibits. Where no such numbers are present, the Court refers to the page numbers at the right side of the bottom of the page.

earlier. *Id.* at. 122-23. The man asked Ms. Rogers if he could pay his water bill, but he did not know which water company he needed to pay. *Id.* at 124. The man then said, "Well, if you can't pay it, can you put money on the pre-paid card that you sell?" *Id.* at 124-25. Ms. Rogers noted that it was the exact conversation that the assistant manager of the St. Ann store had told Ms. Rogers she had with the robber at that store. *Id.* at 125. Ms. Rogers identified the man as Petitioner Rontese L. Miller. *Id.* at 125-26.

Petitioner asked Ms. Rogers if anyone else was in the store. *Id.* at 128. He then told her to get back as he came over the counter. *Id.* at 128. He told her to open the drawer and give him the money. *Id.* at 128. He told her not to look around and not to do anything stupid. *Id.* at 128. Ms. Rogers gave him the money from the drawer, and then Petitioner told her to go get the money out of the back of the store. *Id.* at 128. As they went to the back, Petitioner told Ms. Rogers not to do anything stupid and not to make him hurt her. *Id.* at 128-29. Ms. Rogers gave Petitioner the entire cash box from the safe. *Id.* at 129. The safe had five stacks of 25 $1 bills paper clipped together. *Id.* at 134. It also had a bait pack, which had a $20 bill on the top and the bottom of the stack, with sixty $1 bills in the middle, rubber-banded together. *Id.* at 134.

Petitioner told Ms. Rogers to go to the back of the store and to go into the bathroom and stay there. *Id.* at 129-30. She got on the floor, crouched under the sink, and waited for him to leave. *Id.* at 130. Once she realized he had left, she went to the front, pulled the panic button, and called 911. *Id.* at 130.

In the meantime, Taylor Thacker and Erin Sorbello were eating at a Subway restaurant at about 10:30 a.m. *Id.* at 159, 177-78. While eating, they saw a man running down the staircase outside the window with a black bag in his hand. *Id.* at 160, 180. Thacker joked that somebody either got shot or robbed someone. *Id.* at 180. The man was wearing a reddish hat and a dark red

shirt. *Id.* at 160, 181. He threw the bag into a silver Nissan Altima, got into the vehicle, and took off. *Id.* at 160-61, 170-180, 182. Shortly thereafter, Thacker and Sorbello saw police arrive. *Id.* at 161, 183. They left the restaurant and talked with the police, telling them what they had seen. *Id.* at 161-62, 183-84.

At about 10:40 a.m., Jason West of the St. Ann police department received a dispatch advising him of a robbery in St. Charles involving a suspect driving an older model silver Nissan Altima occupied by one black male. *Id.* at 246-47. West stationed himself on the side of 270 to look for such a car coming from St. Charles. *Id.* at 247-48. He observed a silver Nissan Altima driven by a single black man on Interstate 270 and pulled the car over. *Id.* at 248. Petitioner was the sole occupant of the car. *Id.* West asked for identification, and Petitioner provided a passport bearing the name LaRontae Mickell Miller. *Id.* at 250. West checked the license plates on the car, which came back to a Johnny Mitchell. *Id.* at 251-52. Mr. Miller said that it was his girlfriend's parents' car. *Id.* at 252. Petitioner allowed West to search the car but did not allow him to search the trunk. *Id.*

Petitioner's girlfriend was Aniya Mitchell, who knew Petitioner as LaRontae Miller. *Id.* at 268-69. Ms. Mitchell drove a silver 2002 Nissan Altima that was owned by her father, Johnny Mitchell. *Id.* at 270-71. On the morning of June 24, 2015, Ms. Mitchell was with Petitioner at his home. *Id.* at 271. Petitioner borrowed Ms. Mitchell's car and left, saying that he was going to the bank. *Id.* at 272-73. He returned around lunchtime. *Id.* at 273. When he came back, they went to Advance Auto Parts, *id.* at 273, and then back to Petitioner's house, *id.* at 276.

When Ms. Mitchell went to her own home, her parents showed her a recorded news story about the robbery in St. Charles. *Id.* at 276-77. Ms. Mitchell saw still shots of the robbery from the surveillance video and learned that the robber had driven a silver Nissan Altima. *Id.* at 277-78. Ms.

Mitchell thought the robber in the video looked very similar to Petitioner. *Id.* at 278. She called Crimestoppers and told them that she possibly knew who had committed the robbery. *Id.* at 279, 290. She gave the authorities Petitioner's name and address. *Id.* at 280.

In the early morning of June 25, 2015, officers went to an address in Ferguson looking for Petitioner. *Id.* at 189-91. When he came to the doorway, officers searched him and found $1,150 in cash in his front pocket. *Id.* at 191-92. They also found a passport bearing the name of Larontae Mickell Miller. *Id.* at 193. Officers obtained consent to a search of the apartment from a lessee of the apartment who had free access to the entire apartment. *Id.* at 211-13. The door to Petitioner's bedroom was open, and right by the door an officer saw an open backpack that had a bundle of money visible at the top. *Id.* at 213-14. The officer seized the backpack and searched it at the police department. Id. at 214-15. He found a stack of 60 $1 bills, rubber-banded together. *Id.* He also found a receipt from Advance Auto Parts. *Id.* at 215. He also found four credit cards in the name of Laronta Mickell Miller. *Id.* at 216-17.

The day after the robbery, the police brought Ms. Rogers some photographs to review. *Id.* at 131-32. Ms. Rogers almost instantly picked out Petitioner from the pictures and said she was 100% positive it was him. *Id.* at 132-33, 220. A week or so later, Thacker also identified Petitioner from a photo lineup. *Id.* at 163-64, 222-24.

Following a trial in the Circuit Court of St. Charles County, the jury found Petitioner guilty of second-degree robbery. Resp't Ex. B, at 67; Resp't Ex. A, at 423. The trial court sentenced Petitioner to thirty years in the Missouri Department of Corrections. Resp't Ex. B, at 11, 89-90. Petitioner's conviction was affirmed on direct appeal, and Petitioner's claims for post-conviction relief were denied by the motion court and on appeal. Resp't Ex. E. Petitioner's motion for post-

conviction relief was denied after an evidentiary hearing, and the denial was affirmed on appeal. Resp't Ex. J.

In the instant *pro se* petition, Petitioner asserts seven grounds for relief: (1) that the admission of evidence of the earlier robbery of a check cashing store in St. Ann violated his right to due process of law, a fair trial, and to be tried only for the offense charged, as guaranteed by the Sixth and Fourteenth Amendments: (2) that the admission of evidence found in Petitioner's bedroom violated Petitioner's Fourth and Fourteenth Amendment rights to be free from unlawful search and seizure; (3) that the admission of evidence found in the backpack seized from the bedroom violated Petitioner's Fourth and Fourteenth Amendment rights to be free from unlawful search and seizure; (4) that admission of evidence of passports and credit cards in the name of "Larontae Miller" violated Petitioner's right to due process and to be tried only for the crime with which he was charged, as guaranteed by the Fourteenth Amendment; (5) that trial counsel was ineffective in requesting a lesser-included offense instruction on stealing from a person, over Petitioner's objection; (6) that trial counsel was ineffective in failing to object to the submission of a hammer instruction to the jury; and (7) that trial counsel was ineffective in failing to make a for-cause challenge or exercise a peremptory strike with respect to a particular member of the venire panel. Pet'n, ECF No. 1, at 5-8; Traverse, ECF No. 11, at 8-29. Respondent argues that each of these claims is either not cognizable, meritless, or procedurally defaulted. The Court will address each claim in turn below.

## II.   LEGAL STANDARDS

### A.  Legal Standard for Reviewing Claims on the Merits

Where a claim has been adjudicated on the merits in state court proceedings, a federal court may grant habeas relief only if the state court's adjudication of the claim "(1) resulted in a decision

that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "[A] determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner has the "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C.A. § 2254(e)(1).

A state court decision is "contrary to" clearly established Supreme Court precedents "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Brown v. Payton*, 544 U.S. 133, 141 (2005). A state court decision involves an "unreasonable application" of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams*, 529 U.S. at 407-08; *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004) (citations and internal quotation marks omitted).

### B. Legal Standard for Procedurally Defaulted Claims

To preserve a claim for federal habeas review, "a state habeas petitioner must present that claim to the state court and allow that court an opportunity to address his claim." *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). "Where a petitioner fails to follow applicable state procedural rules, any claims not

properly raised before the state court are procedurally defaulted." *Id.* The federal habeas court will consider a procedurally defaulted claim "only where the petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice." *Id.* (citing *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992)). To demonstrate cause, a petitioner must show that "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice, a petitioner must demonstrate that the claimed errors "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *accord Ivy v. Caspari*, 173 F.3d 1136, 1141 (8th Cir. 1999). Lastly, in order to assert the fundamental miscarriage of justice exception, a petitioner must "present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) (quoting *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006)).

## III.    DISCUSSION

### A. Ground One: Due Process Violation Based on Admission of Evidence of Earlier Robbery

In Ground One, Petitioner asserts that the trial court violated Petitioner's right to due process, a fair trial, and to be tried only for the offenses charged, as guaranteed by the Sixth and Fourteenth Amendments, when it admitted evidence of an earlier robbery of a check cashing store in St. Ann. Petitioner raised this claim in his direct appeal, and the Missouri Court of Appeals denied it on the merits. Resp't Ex. E, at 3-6. Respondent argues that this claim is not cognizable in this proceeding because it concerns a question of state law. Alternatively, Respondent argues that the state court reasonably found this claim without merit.

In addressing this claim, the Missouri Court of Appeals noted that under Missouri law, although evidence of a defendant's prior commission of a separate crime is generally inadmissible when offered for the purposes of showing the defendant's propensity to commit similar crimes, evidence of uncharged misconduct is admissible when it has some legitimate tendency to directly establish the defendant's guilt of the charge for which he is on trial. *Id.* at 4. For example, such evidence may be admissible where evidence of prior misconduct establishes the identity of the person charged with commission of the crime on trial, if the charged and uncharged crimes are "nearly identical and the methodology so unusual and distinctive that the crimes resemble a signature of the defendant's involvement in both crimes." *Id.* (internal quotation marks omitted). It noted that Petitioner's identity as the perpetrator of the June 24th robbery was at issue in the trial. *Id.* at 5. It found that the two robberies included sufficient "unusual and distinctive similarities" and were "sufficiently identical" to help prove the identity of Petitioner as the perpetrator of the charged robbery. *Id.* at 5-6. Specifically, it noted that "the June 2 and June 24 robberies were of two different Advance America cash checking stores separated by eight miles, occurred within a three week period, were distinctively initiated by unusual and abandoned requests to pay a water company bill, and concluded by demanding employees to wait in the bathroom until [Petitioner] left the store." *Id.* at 6.

The Missouri Court of Appeals also found that Petitioner had not established prejudice from the alleged error. *Id.* It noted that in addition to the prior robbery, Petitioner was identified in testimony from the Advance America employee present at the June 24 robbery, a witness sitting at a Subway nearby who saw Petitioner fleeing, and Petitioner's girlfriend, who called law enforcement after seeing surveillance video of the robbery on the news. The court found that "even

without evidence of the prior uncharged robbery, there was sufficient evidence to establish the identity of [Petitioner] as the perpetrator of the June 24 robbery." *Id.*

To the extent that Petitioner challenges the state court's conclusion that this evidence was admissible under Missouri law, the Court agrees with Respondent that the claim is not cognizable. "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "In the habeas context, rules of evidence and trial procedure are usually matters of state law." *Bucklew v. Luebbers*, 436 F.3d 1010, 1018 (8th Cir. 2006) (internal quotation marks omitted). *See also Estelle*, 502 U.S. at 72 (noting that a federal habeas court may not "reverse [a petitioner's] conviction based on a belief that the trial judge incorrectly interpreted the California Evidence Code in ruling that the prior injury evidence was admissible as bad acts evidence in this case.").

To the extent that Petitioner argues that the admission of this evidence amounted to a denial of due process, the Court finds that argument without merit. "A state court's evidentiary rulings can form the basis for habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process." *Osborne v. Purkett*, 411 F.3d 911, 917 (8th Cir. 2005), *as amended* (June 21, 2005) (quoting *Parker v. Bowersox,* 94 F.3d 458, 460 (8th Cir. 1996)). For the reasons stated in the Missouri Court of Appeals' opinion, which are well supported by the record, the evidence of the earlier robbery had a legitimate tendency to establish Petitioner's identity as the perpetrator of the charged robbery. Moreover, as the Missouri Court of Appeals also reasonably found, even if there was error in admitting this evidence, Petitioner was not prejudiced by that error given the abundant other evidence of his responsibility for the robbery, including the identification by Ms. Rogers, the identification by Thacker, and the evidence that Petitioner's

girlfriend identified Petitioner as the person in the surveillance video. The Court finds no due process violation.

For all of the above reasons, Ground One will be denied.

### B.  Grounds Two and Three: Fourth Amendment Violations

In Ground Two, Petitioner asserts that the trial court violated his Fourth Amendment rights by admitting evidence the police seized from his bedroom. In Ground Three, Petitioner argues that the trial court violated his Fourth Amendment rights by admitting evidence of cash and other contents of his backpack. Respondent argues that these claims are not cognizable in this habeas proceeding because the state courts gave Petitioner an opportunity to litigate these claims (and because he actually did litigate these claims in state court). The Court agrees with Respondent.

In *Stone v. Powell*, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. 465, 494 (1976). "To show that he was not afforded an opportunity for full and fair litigation of his claim, [Petitioner] would have to show that the State 'provided no corrective procedures at all to address the alleged Fourth Amendment violation' or that the State 'provided a corrective mechanism, but [Petitioner] was precluded from using that mechanism because of an unconscionable breakdown in the underlying process.'" *Chavez v. Weber*, 497 F.3d 796, 802 (8th Cir. 2007) (quoting *Willett v. Lockhart*, 37 F.3d 1265, 1271-72 (8th Cir. 1994) (en banc)).

Petitioner does not argue that the Missouri did not provide corrective procedures to address the alleged Fourth Amendment violations, nor does he argue that he was precluded from using the mechanism provided. To the contrary, Petitioner *did* litigate his Fourth Amendment claims in state

court. *See* Resp't Ex. M, at 1-2 (Motion to Suppress Evidence); Resp't Ex. K (transcript of hearing on pretrial motions, including motion to suppress evidence); Resp't Ex. C, at 22-30 (brief on direct appeal asserting Fourth Amendment claims); Resp't Ex. E, at 7-13 (Missouri Court of Appeals opinion ruling on Fourth Amendment claims).

Because Petitioner was afforded an opportunity to fully and fairly litigate his Fourth Amendment claim in the state courts, he may not obtain federal habeas relief on these claims, and Grounds Two and Three will be denied.

### C.  Ground Four: Violation of Due Process Based on Admission of Evidence of Passport and Credit Cards

In Ground Four, Petitioner argues that his due process rights were violated when the trial court admitted evidence of a passport and credit cards with the listed name of "Larontae Miller." Petitioner did not raise this claim in his motion for new trial. Resp't Ex. B, at 69-74. When he raised it on direct appeal, the Missouri Court of Appeals noted that because the issue had not been preserved by including it in the motion for new trial, the issue would be reviewed only for plain error. Resp't Ex. E, at 13-14 (citing *State v. Winfield*, 5 S.W.3d 505, 511 (Mo. 1999) & Mo. Sup. Ct. R. 29.11(d)).  The Missouri Court of Appeals conducted a discretionary plain error review and found no plain error. *Id.* at 14-16.

Respondent argues that Petitioner defaulted this claim by failing to include it for consideration by the trial court in the motion for new trial. The Court agrees.  In Missouri, "a claim [must] be presented 'at each step of the judicial process' in order to avoid default." *Jolly v. Gammon*, 28 F.3d 51, 53 (8th Cir. 1994) (quoting *Benson v. State*, 611 S.W.2d 538, 541 (Mo. Ct. App. 1980)). *See also Kirk v. State*, 520 S.W.3d 443, 457 (Mo. 2017) ("[T]he rule is clearly established that in order to preserve a constitutional issue for appellate review, it must be raised at

the earliest time consistent with good pleading and orderly procedure and must be kept alive during

the course of the proceedings.") (quoting *State v. Liberty*, 370 S.W.3d 537, 546 (Mo. 2012)).

Here, the Missouri Court of Appeals found that this claim was not preserved for review

because Petitioner did not raise it in his motion for new trial. Although the court conducted a

discretionary plain error review of this claim, that did not cure the procedural default. A federal

habeas court "cannot reach an otherwise unpreserved and procedurally defaulted claim merely

because a reviewing state court analyzed that claim for plain error." *Clark v. Bertsch*, 780 F.3d

873, 874 (8th Cir. 2015). Because Petitioner failed to preserve this claim under Missouri law, and

because the Missouri Court of Appeals' discretionary plain-error review of Ground Four does not

cure the procedural default of that claim, the Court finds that Ground Four has been procedurally

defaulted. *See, e.g., Clayton v. Steele*, No. 4:14CV1878 RLW, 2018 WL 1382401, at *6 (E.D. Mo.

Mar. 16, 2018) (failure to raise claim of trial court error in motion for new trial constituted

procedural default even where the state court conducted plain-error review of the unpreserved

claim). Petitioner has not demonstrated cause and prejudice to excuse the procedural default of

this claim, nor does he argue that failure to address these claims would result in a fundamental

miscarriage of justice.

For all of the above reasons, Ground Four will be denied.

### D.     Grounds Five Through Seven: Ineffective Assistance of Trial Counsel

In Grounds Five through Seven, Petitioner asserts claims of ineffective assistance of trial

counsel. These claims were raised in his motion for post-conviction relief and in his appeal from

the denial of that motion, and the Missouri Court of Appeals denied them on the merits. Resp't Ex. J.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). To show ineffective assistance of counsel, a petitioner must show both that "[his] counsel's performance was deficient" and that "the deficient performance prejudiced [his] defense." *Id.* at 687. To show deficient performance, Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (citation and internal quotation marks omitted). To show prejudice, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Where, as here, an ineffective assistance claim has been addressed by the state court, this Court must bear in mind that "[t]aken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 201 (2011)). In the context of a habeas claim, it is not sufficient for a petitioner to "show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance." *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). "Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* at 699.

13

The Court will address each of Petitioner's ineffective assistance claims below.

### 1. Ground Five: Trial Counsel's Request for a Lesser-Included Offense Instruction of Stealing From a Person

In Ground Five, Petitioner asserts that he received ineffective assistance of trial counsel because counsel requested the trial court give a lesser-included offense instruction of stealing from a person, over Petitioner's objection. Petitioner argues that by offering this instruction, trial counsel conceded that Petitioner was guilty of the lesser-included offense.

In assessing this claim, the Missouri Court of Appeals properly recognized that *Strickland* provided the appropriate standard. Resp't Ex. J, at 2-3. Addressing the first prong of *Strickland* (deficient performance) the court stated:

> The movant cites no authority to support his contention that requesting an instruction for a lesser-included offense constitutes an admission of guilt. Instead, the movant relies on *McCoy v. Louisiana*, 138 S.Ct. 1500 (2018), but *McCoy* is readily distinguishable. In that case, over the defendant's insistence to the contrary, counsel admitted in the guilt phase of a capital trial that McCoy "committed three murders . . . . [H]e's guilty." *McCoy*, 138 S.Ct. at 1505. The U.S. Supreme Court held that:
>
> > [A] defendant has the right to insist that counsel refrain from admitting guilt. . . . [I]t is the defendant's prerogative, not counsel's, to decide on the objective of his defense: to admit guilt in the hope of gaining mercy at the sentencing stage, or to maintain his innocence, leaving it to the State to prove his guilt beyond a reasonable doubt.
>
> *Id*. The Court in *McCoy* did not address whether submission of an instruction for a lesser included offense constitutes an admission of the defendant's guilt. *See generally*, 138 S.Ct. 1500. Nor did the Court address the effectiveness of counsel under *Strickland v. Washington*, stating "[b]ecause a client's autonomy, not counsel's competence, is in issue, we do not apply our ineffective-assistance-of-counsel jurisprudence . . . ." *Id*. at 1510-11.
> 
> Here, in contrast to circumstances in *McCoy*, trial counsel did not admit to the jury that the movant committed the robbery or, indeed, that he committed any offense. Rather, counsel argued that the witnesses' identifications were inaccurate. He argued that the movant was not the person who took the money from the manager at Advance America, and he identified weaknesses in the State's case. Trial counsel mentioned the lesser-included-offense instruction to the jury, but did

not admit that the movant was guilty of stealing from a person. Instead, he argued that in the event the jury believed the movant was "a suspect," that the jury must still determine whether the movant made a threat of immediate physical harm, which differentiates second-degree robbery from stealing from a person. Trial counsel concluded his argument by asking the jury to find the movant not guilty.

An instruction for a lesser-included offense, like an instruction for a charged offense, allows a defendant to maintain innocence. It requires the State to prove guilt beyond a reasonable doubt for each and every element of the offense. As a result, such an instruction does not concede guilt. We find no inconsistency with the overall defense strategy of seeking an acquittal while also giving the jury an option to convict of a lesser crime in the event the jury was convinced the movant took the money. Strategic choices made, as here, after a thorough investigation of the law and the facts are virtually unchallengeable. *Davis*, 486 S.W.3d at 906. "Choosing one reasonable trial strategy over another is not ineffective assistance of counsel." *King v. State*, 505 S.W.3d 419, 424 (Mo. App. E.D. 2016). The movant failed to establish that trial counsel admitted the movant's guilt, or that the trial strategy was unreasonable.

Resp't Ex. J, at 4-5.

The state court further found that Petitioner failed to establish that he had explicitly objected to trial counsel's request for the lesser-included offense instruction. *Id.* at 5-6. It deferred to the motion court's implicit finding that trial counsel's testimony on that point was credible and Petitioner's was not. *Id.* at 5-6.

Addressing the second prong of *Strickland*, the Missouri Court of Appeals found no prejudice arising from the submission of the lesser-included offense instruction. *Id.* at 6. It noted that the jury convicted Petitioner of the greater offense with which he was charged (second-degree robbery), and it found no reason to believe that the jury would have acquitted the movant of second-degree robbery had its only choices been either to convict the movant of robbery (which it did) or acquit the movant of robbery. *Id.*

The state court's rejection of this claim was not contrary to, or an unreasonable application of, *McCoy* or *Strickland*, nor was it based on an unreasonable determination of the facts. The state court's determination that the Supreme Court's decision in *McCoy* was distinguishable was

reasonable and supported by the record. In *McCoy*, trial counsel, over the defendant's objection, conceded during the guilt phase of a trial that the Petitioner was "guilty." *Mccoy v. Louisiana*, 584 U.S. 414, 417 (2018). Here, in contrast, trial counsel did not admit that Petitioner was guilty of any robbery or any offense; instead, he argued for Petitioner's innocence and argued that the identifications of him as the robber were unreliable. Resp't Ex. A, at 392-409. The state court also reasonably found that unlike the defendant in *McCoy*, Petitioner had not established that he explicitly objected to the request for the lesser-included offense instruction. That finding is supported by trial counsel's testimony at the evidentiary hearing that Petitioner consented to submitting the instruction and that trial counsel did not recall Petitioner's objecting to the instruction. Resp't Ex. G, at 12-17. Petitioner points to no evidence to contradict that finding aside from his own testimony, which the state court implicitly found less credible than counsel's testimony. This does not constitute "clear and convincing evidence" that would rebut the presumption of the correctness of the state court's factual finding. *See* 28 U.S.C. § 2254(e)(1).

The state court's determination that the request for the lesser-included offense instruction was a reasonable trial strategy was also reasonable and supported by the record. Trial counsel testified that he believed that the instruction was supported by the evidence because an argument could be made, based on Ms. Rogers' testimony, that the offense that actually took place was stealing as opposed to robbery. *Id.* at 13. He also testified that he discussed with Petitioner the pros and cons of submitting the lesser included instruction as opposed to proceeding with an all or nothing defense before deciding (with Petitioner's consent) to submit it. *Id.* at 12-14. "The decision of whether to seek a lesser-included offense instruction is generally a strategic decision requiring even experienced counsel to make difficult judgment calls." *Turner v. Korneman*, No. 4:20-CV-0899-RHH, 2023 WL 2571559, at *4 (E.D. Mo. Mar. 20, 2023) (citing *Neal v. Acevedo*, 114 F.3d

803, 806 (8th Cir. 1997); *Driscoll v. Delo*, 71 F.3d 701, 715 (8th Cir. 1995); & *Riley v. Lockhart*, 726 F.2d 421, 423 (8th Cir. 1984)).

The state court's finding that Petitioner could not establish prejudice under the second prong of *Strickland* was also reasonable and supported by the record. The jury convicted Petitioner of the greater charge, second-degree robbery. It was not unreasonable for the state court to conclude that there was no reasonable probability that the jury would have acquitted him of second-degree robbery had it not had the option of the lesser-included offense of stealing from a person.

For all of the above reasons, Ground Five will be denied.

### 2. *Ground Six: Trial Counsel's Failure to Object to Hammer Instruction*

In Ground Six, Petitioner asserts that he received ineffective assistance of trial counsel because trial counsel did not object to the trial court's giving a "hammer instruction" to the jury. Respondent argues that the state court reasonably determined that this claim was without merit.

The facts relevant to this claim are as follows. The jury began deliberations at 2:34 p.m. Resp't Ex. A, at 415. At 5:40 p.m., the jury foreperson wrote a note stating, "What is the course of action if we cannot form a unanimous vote?" *Id.* at 417-18. The trial court responded, "The Court instructs you to continue deliberating" *Id.* at 418. At 6:45 p.m., the jury wrote a note stating, "We cannot come to an agreement. We have a question over one of the instructions. Can we speak with you? If we cannot have clarification, I believe, and the jury unanimously agrees, that we will be hung if that is applicable." *Id.* The trial court called the jury back to the courtroom at approximately 7:17 p.m. and asked the jury foreperson if there had been any change in the deliberation of the jury since 6:45 p.m. *Id.* at 416, 419. The foreperson indicated that there had been no change. *Id.* at 419. The trial court next asked what the number of votes was. *Id.* The

foreperson first responded that it was "[t]en to two," but then stated it was "eleven to one." *Id.*

After receiving this information, the trial court gave the jury an instruction based on Missouri

Approved Instruction MAI-CR 3d 312.10—the "hammer instruction." *Id.* at 419-20. The trial court

instructed the jury as follows:

> You should make every reasonable effort to reach a verdict as it is desirable that
> there be a verdict in every case. Each of you should respect the opinions of your
> fellow jurors as you would have them respect yours, and in a spirit of tolerance and
> understanding endeavor to bring the deliberations of the whole jury to an agreement
> upon a verdict. Do not be afraid to change your opinion if the discussion persuades
> you that you should. But a juror should not agree to a verdict that violates the
> instruction of the Court, nor should a juror agree to a verdict of guilty unless he's
> convinced of the Defendant's guilt beyond a reasonable doubt.

*Id.* at 419-20. Petitioner's counsel did not object to this instruction. *Id.* at 419. The jury resumed

deliberations at 7:24 p.m. and returned to the courtroom with a verdict at 9:40 p.m. *Id.* at 422.

In denying Petitioner's claim that his counsel was ineffective in failing to object to this

instruction, the Missouri Court of Appeals (after setting forth the *Strickland* standard) stated:

> Trial counsel testified at the evidentiary hearing that, as a matter of trial strategy,
> he did not object to the hammer instruction because: (1) the instruction is a Missouri
> Approved Instruction; and (2) he did not know which way the eleven-to-one
> deadlock fell. Given the evidence and perceived weaknesses in the State's case,
> particularly the defense's arguments concerning mistaken identification, trial
> counsel believed it possible that the jury was divided eleven to one for acquittal.
> The motion court concluded that trial counsel's declining to object was "sound trial
> strategy." We agree.

Resp't Ex. J, at 7. The court further found that any objection to the hammer instruction would have

lacked merit. *Id.* at 7-8. It noted that under Missouri law, a trial court may give the hammer

instruction when either the length of deliberation or communication from the jury causes the trial

court to believe that the jury is deadlocked, and that giving a hammer instruction alone is not

coercive under Missouri law. *Id.* at 7-8 (citing *State v. Brand*, 544 S.W.3d 284, 292 (Mo. Ct. App.

2018)). Applying the factors used by Missouri courts to determine whether a hammer instruction

is coercive, it found no indication that the instruction was coercive under the circumstances because (1) "the four-and-a-half hours the jury spent deliberating demonstrates the necessity for the hammer instruction," (2) the jury deliberated for two hours and 15 minutes after receiving the hammer instruction, suggesting that the jury followed the instruction and considered and deliberated upon one another's viewpoints; (3) the foreperson had not revealed whether the eleven to one majority was for guilt or acquittal; and (4) the instruction complied with the Missouri Approved Instructions and the Notes on Use. *Id.* at 8-9. The court concluded, "Strategic choices made, as here, after a thorough investigation of the law and the facts are virtually unchallengeable. In addition, we will not find counsel ineffective for failing to make a meritless objection." *Id.* at 9 (internal citations omitted).

The state court's rejection of this claim was not contrary to, or an unreasonable application of, *Strickland*, nor was it based on an unreasonable determination of the facts. The state court's finding that counsel's decision not to object to this instruction was a sound trial strategy was reasonable and was supported by counsel's testimony at the evidentiary hearing that the hammer instruction was proper under Missouri law and that he believed based on the evidence that it was possible the jury was divided eleven to one in Petitioner's favor. *See* Resp't Ex. G, at 23-24. The state court's finding that the objection to this instruction would have been without merit concerns a matter of state law, and it is not this Court's role to reexamine that finding. *See Estelle*, 502 U.S. at 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). "Counsel's failure to advance a meritless argument cannot constitute ineffective assistance." *Rodriguez v. United States.*, 17 F.3d 225, 226 (8th Cir. 1994). Petitioner has not overcome the strong presumption that trial counsel's decision falls within

the wide range of reasonable professional assistance, and thus he cannot show that counsel's performance was deficient under *Strickland*.

For all of the above reasons, Ground Six will be denied.

### 3. Ground Seven: Trial Counsel's Failure to Strike for Cause, or Use a Peremptory Challenge to Remove, a Venireperson

In Ground Seven, Petitioner asserts that he received ineffective assistance of trial counsel because trial counsel did not seek to strike venireperson T.P. (also referred to as venireperson Powell) for cause and did not use a peremptory challenge to remove him. Respondent argues that the state court reasonably determined that this claim was without merit.

The facts relevant to this claim are as follows. During voir dire, the prosecutor asked whether anyone knew Petitioner, and no panel members responded. Resp't Ex. A, at 45. At the post-conviction evidentiary hearing, Petitioner testified that he had previously seen T.P. at the gym. Resp't Ex. G, at 45. He testified that they bumped into each other in the hallway and had a stand off where they looked each other in the eye, seeing which person was going to go around or get out of the way. *Id.* at 46. Petitioner felt T.P. was aggressive, and he believed T.P. felt the same about Petitioner. *Id.* at 47. Petitioner testified that he told trial counsel that he and T.P. had previously had an incident and that T.P. shouldn't be a juror. *Id.* at 48-50. Trial counsel testified that he recalled Petitioner telling him that he thought he recognized T.P., but nothing more. *Id.* at 18. He testified that Petitioner never said anything about having bumped into T.P. at a gym and having had a stare down. *Id.* at 19. He testified that if Petitioner had told him that, he would have asked questions of T.P. during voir dire. *Id.* He also testified that Petitioner never asked that T.P. be struck from the jury or indicated a desire to have him struck. *Id.* at 18-19. He testified that based on the information he had, he did not believe there was any reason to strike T.P. from the jury. *Id.*

at 19. He further testified that he gave Petitioner "universal say" over which jurors he wanted to

strike. *Id.* at 17.

Addressing this claim, the Missouri Court of Appeals stated:

The motion court expressly found trial counsel's testimony credible while it expressly found the movant's testimony contradictory and not credible. "We defer to the motion court's credibility determinations made after an evidentiary hearing, and the motion court is free to believe or disbelieve the testimony of any witness, including the movant." *Steele*, 551 S.W.3d at 544. As a result, we will not find trial counsel ineffective for failing to strike a qualified potential juror when he was neither asked to do so nor informed of any reason to do so.

Further, to succeed on a claim that counsel was ineffective for failing to strike a member of the venire, either peremptorily or for cause, a movant must establish that, *inter alia*, a juror who was actually biased served on the jury. *Id.* at 547. An unqualified juror is one whose views substantially impair his or her ability to perform in accordance with the court's instructions and the juror's oath. *Id.* The evidence must clearly show that the challenged juror was, in fact, biased or prejudiced. *Id.* If the juror at issue was not actually biased, however, then trial counsel was not ineffective in failing to strike the juror. *Id.*

Here, the evidence shows, at most, a fleeting encounter where the movant had no other interaction with the juror, and never saw the juror again. The movant has failed to establish that T.P. was actually biased. As the motion court observed, the State asked the venire panel if anyone knew the movant, by either his true name or his alias. Neither T.P. nor any other juror indicated that they knew the movant. None of T.P.'s answers during *voir dire* suggested that he was biased or prejudiced against the movant or otherwise unqualified to serve on the jury. A movant is not prejudiced by service on the jury of one particular qualified juror over another qualified juror. *Id.* at 548.

Without more, it cannot be said that counsel failed to exercise the level of skill and diligence that a reasonably competent attorney would exercise under similar circumstances. The motion court did not clearly err in denying the movant's claim that trial counsel was ineffective for failing to strike juror T.P.

Resp't Ex. J, at 11-12.

The state court's rejection of this claim was not contrary to, or an unreasonable application

of, *Strickland*, nor was it based on an unreasonable determination of the facts. The state court's

conclusion that trial counsel was not informed of any reason why he should strike T.P. was

supported by trial counsel's testimony, which the state court found more credible than Petitioner's

testimony. The state court's finding that Petitioner had not shown T.P. was actually biased or

prejudiced is also supported by the record, including the fleeting nature of the alleged prior encounter, the fact that T.P. did not indicate that he knew Petitioner, and the absence of any indication of bias during voir dire questioning or otherwise. Petitioner has produced no clear and convincing evidence to rebut the presumption of correctness of the state court's factual findings. Petitioner has also produced nothing to or to overcome the presumption that trial counsel's conduct fell within the wide range of reasonable professional assistance.

For all of the above reasons, Ground Seven will be denied.

### E.  Cumulative Error

In Petitioner's Traverse, Petitioner appears to assert that the cumulative errors of Grounds One through Four violate his rights to due process and a fair trial. This claims is without merit. Under Eighth Circuit law, "cumulative error does not call for habeas relief, as each habeas claim must stand or fall on its own." *Henderson v. Norris*, 118 F.3d 1283, 1288 (8th Cir. 1997) (quoting *Scott v. Jones*, 915 F.2d 1188, 1191 (8th Cir. 1990)). *See also Taylor v. Dayton*, No. CV 16-3893 (DSD/LIB), 2019 WL 1643555, at *2 (D. Minn. Apr. 16, 2019) ("[T]he Eighth Circuit has held that cumulative error fails to support a habeas claim."), *aff'd*, 968 F.3d 857 (8th Cir. 2020).

### IV.    CONCLUSION

For all of the above reasons, Petitioner is not entitled to federal habeas relief. Under 28 U.S.C. § 2253, an appeal may not be taken to the court of appeals from the final order in a 28 U.S.C. § 2254 proceeding unless a circuit judge or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A); *Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). To grant such a certificate, the judge must find that the Petitioner "has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the

issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). The Court finds that Petitioner has not made a substantial showing of the denial of a constitutional right, so the Court will not issue a certificate of appealability. Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Rontese L. Miller's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DENIED.**

**IT IS FURTHER ORDERED** that this case is **DISMISSED.**

**IT IS FINALLY ORDERED** that no certificate of appealability shall issue because Petitioner has failed to make a substantial showing that he has been denied a constitutional right. 28 U.S.C. § 2253.

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 25th day of September, 2025.